# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CINEMA SCENE MARKETING & PROMOTIONS, INC, BRAD DERUSSEAU, MICHAEL HOLMES, JOSEPH ROSS, AND BRUCE SIMS,<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>CALIDANT CAPITAL, LLC, DREW N. BAGOT, AND DAVID LAI,<br><br>     **Defendants.** | **Case No. 2:16-CV-2759-JAR** |

## MEMORANDUM AND ORDER

Plaintiffs filed this action alleging Defendants lied to induce them to sign a buy-out letter of intent with Defendants, who neither had the money to buy Plaintiffs' business nor the intent to follow through with the purchase. This caused Plaintiffs to reject another potential buyer and ultimately sell their business for less than what Defendants had promised. Before the Court is Defendants' Motion to Dismiss Counts I and II of Plaintiffs' First Amended Complaint (Doc. 16).[1] The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies the motion as to Count I, but grants dismissal as to Count II.

## I.    Factual Background

The following facts are alleged in the First Amended Complaint ("FAC") and assumed to be true for purposes of deciding this motion.

---

[1] Defendants had previously filed a motion to dismiss Counts II and III of Plaintiffs' Petition (Doc. 6). Plaintiffs' filing of the First Amended Complaint moots that motion. Accordingly, the Court denies it as MOOT.

Plaintiff Cinema Scene Marketing & Promotions, LLC ("Cinema Scene") is in the theater electronic screen and menu business. Its principals are Plaintiffs Brad Derusseau, Michael Holmes, Joseph Ross, and Bruce Sims ("CS Principals"; collectively with Cinema Scene, "Plaintiffs"), all of whom are residents of Johnson County, Kansas.

Defendant Calidant Capital, LLC ("Calidant") is a Texas capital investment limited liability company with two members, Defendants Drew Bagot and David Lai.

In the fall of 2015, Calidant first told Cinema Scene that it wanted to invest in Cinema Scene and buy-out Cinema Scene's principals. The CS Principals interviewed a number of consultants who sought to purchase and/or finance the acquisition of the CS Principals' ownership of Cinema Scene, including Defendants. Recognizing that they had significant competition to secure a deal, Lai and Bagot made three major misrepresentations to induce Plaintiffs to enter a buy-out letter of intent ("LOI") with them: 1) Defendants had secured all necessary financing to complete the transaction under the LOI; 2) Defendants could "deliver" Studio Movie Grill ("SMG") as a partner in Plaintiffs' operations; and 3) Defendants would facilitate meetings between Plaintiffs and Cinemark USA, Inc. ("Cinemark") and deliver Cinemark as a client and/or partner.

Prior to entering into the LOI, the parties met in person at their respective offices or at a restaurant. They also had telephone conferences. Cook Jordan and David Kakareka, brokers serving as Plaintiffs' representatives, were present at some of these meetings. The alleged misrepresentations were made on various dates, including August 15, 2015, September 17, 2015, October 6, 2015, October 7, 2015, and October 26, 2015.

On or around November 11, 2015, the parties executed a LOI, which generally outlined some of the basic terms of a future deal, the precise terms of which were to be later negotiated

2

and finalized and thoroughly documented, as is customary in such complicated transactions.  The

LOI obligated the parties to negotiate in good faith toward a purchase agreement—and other

documents incident to such purchase agreement—in conformance with guidelines provided in

the LOI.  The LOI also contained an exclusivity term whereby Cinema Scene agreed to not

negotiate with parties other than Calidant regarding transactions alternative to the transaction

contemplated by the LOI for a period of ninety days following execution of the LOI.

After signing the LOI, the parties began negotiating Calidant's investment contemplated

by the LOI (the "Transaction").  In January and February 2016, the parties corresponded on

countless occasions, both directly through their principals and indirectly through their attorneys

and brokers.

Prior to the LOI's original ninety-day exclusivity period expiring in early February 2016,

Plaintiffs agreed to extend the exclusivity period through February 29, 2016 to close the

Transaction.  When this extended period expired, Plaintiffs again agreed to extend the

exclusivity period to March 15, 2016.

In late February 2016, Defendants and their would-be financial partner Saratoga

presented to Plaintiffs several one-sided documents—including a credit agreement and

management services agreement—that severely favored Defendants.  Plaintiffs responded,

requesting changes, and reiterating its desire to close the Transaction.  Defendants did not

respond to the requested changes.

On or about March 3, 2016, AMC made public its acquisition of Carmike Cinemas.

Within approximately eight hours of AMC's announcement, Defendants informed Plaintiffs that

their financial partner, Saratoga, backed out of the Transaction in light of AMC's announcement.

Plaintiffs believe Defendants and Saratoga were aware of AMC's acquisition of Carmike Cinemas prior to the announcement.

The parties continued to talk after the LOI's exclusivity period lapsed on March 15, 2016, but Defendants' new proposals contained terms substantially different and less favorable than the LOI.

In mid-April 2016, Plaintiffs attended CinemaCon and made contacts that eventually led to a sale of their business to a third party. That sale closed on terms substantially inferior to those offered in the LOI.

Shortly before the closing on the third-party sale, Calidant demanded Cinema Scene pay it $385,000 for attorneys' fees allegedly incurred in connection with the Transaction. Calidant asserted that Cinema Scene breached the LOI by failing to negotiate in good faith, by failing to close the Transaction, by breaching the LOI's exclusivity obligations, and by failing to execute documents associated with the Transaction. Plaintiffs filed this suit in response. Defendants now move to dismiss the fraudulent and negligent misrepresentation claims (Counts I and II, respectively).

## II.     Legal Standards

Defendants move to dismiss Counts I and II of the FAC under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[2] To state a claim for relief, "the complaint must give the court reason to believe that this plaintiff has a reasonable

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

likelihood of mustering factual support for these claims."[3]  The plausibility standard does not

require a showing of probability that a defendant has acted unlawfully, but requires more than "a

sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements

of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support

each claim."[5]  Finally, the Court must accept the nonmoving party's factual allegations as true

and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of

a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7]  Thus,

the court must first determine if the allegations are factual and entitled to an assumption of truth,

or merely legal conclusions that are not entitled to an assumption of truth.[8]  Second, the court

must determine whether the factual allegations, when assumed true, "plausibly give rise to an

entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[10]

---

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *Id*.

[8] *Id*. at 679.

[9] *Id*.

[10] *Id*. at 678.

### III. Analysis

#### A. Choice of Law: Kansas Law Governs Counts I and II

Defendants argue that because the LOI contains a choice-of-law provision adopting

Texas state law, Texas law governs all claims arising from the LOI, including Plaintiffs' claims

for fraudulent and negligent misrepresentation.[11] The Court disagrees.

A federal court sitting in diversity must apply the choice-of-law rules of the state in

which it sits.[12] Thus, the Court will apply Kansas choice-of-law rules. Two of these rules

support applying Kansas law to these claims.

First, where the outcome of a dispute would be the same under the laws of either state,

the Court need not decide the conflict and may apply Kansas law.[13] In this case, both parties

have argued the results will be the same whether the Court follows Kansas or Texas law. Thus,

the Court may apply Kansas law to these claims.

Second, "[w]here the parties to a contract have entered an agreement that incorporates a

choice of law provision, Kansas courts generally effectuate the law chosen by the parties to

control the agreement."[14] Counts I and II, however, are not based on the LOI, but are tort claims

based on Defendants' alleged breach of common law duties not to induce reliance by

misrepresentations. For tort claims, Kansas follows the lex loci delicti approach, meaning the

---

[11] Doc. 17 at 6.

[12] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[13] *Shutts v. Phillips Petroleum Co.*, 732 P.2d 1286, 1291 (Kan. 1987) ("if the law of Kansas is not in conflict with any of the other jurisdictions connected to the suit, then there is no injury in applying the law of Kansas."); *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 372 (Kan. 2002) ("Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue."); *Howard v. Ferrellgas Partners, L.P.*, 92 F. Supp. 3d 1115, 1123 (D. Kan. 2015) (applying Kansas law where the parties agreed and it had been established that the court's findings would be the same whether it followed Kansas, Washington, or California law).

[14] *Brenner*, 44 P.3d at 375.

law of the "place of the wrong" controls.[15]  In a misrepresentation claim, "the place of wrong is

where the loss is sustained, not where the misrepresentations were made."[16]  Because Plaintiffs

sustained their injuries in Kansas, the Court concludes Kansas law governs these claims.

### B.  Economic Loss Doctrine

Defendants argue the economic loss doctrine bars Counts I and II because Plaintiffs

suffered no independent injury apart from those they allegedly suffered with respect to

performance of the LOI.[17]  They insist that tort damages are not recoverable for economic losses

resulting from a party's failure to perform under a contract.

The economic loss doctrine is "'a judicially created doctrine that sets forth the

circumstances under which a tort action is prohibited if the only damages suffered are economic

losses.'"[18]  "In its original form, the economic loss doctrine simply prohibited a commercial

buyer of defective goods from suing in negligence or strict liability when the only injury

consisted of damage to the goods themselves."[19]  Courts have extended the doctrine's application

beyond the commercial product liability sphere to preserve the distinctions between contract and

tort law.[20]  Although its scope is still unfolding, the Kansas Supreme Court ("KSC") has held

that negligent misrepresentation claims are not subject to the economic loss doctrine.[21]

---

[15] *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).

[16] *Raymark Indus., Inc. v. Stemple*, 714 F. Supp. 460, 464 (D. Kan. 1988) (quoting First Restatement of Conflicts § 377, n.4); *Seitter v. Schoenfeld*, 678 F. Supp. 831, 836 (D. Kan. 1988) (holding the law of the place where the "effects" of a misrepresentation were felt controls).

[17] Doc. 17 at 19.

[18] *David v. Hett*, 270 P.3d 1102, 1105 (Kan. 2011) (quoting *Indemnity Ins. Co. v. Am. Aviation*, 891 So. 2d 532, 536 (Fla. 2004)).

[19] *Rinehart v. Morton Bldgs., Inc.*, 305 P.3d 622, 627 (2013) (citation omitted).

[20] *Id*. at 628–29.

[21] *Id*. at 624, 626, 630–33.

In *Rinehart*, Kenneth and Beverly Rinehart contracted with Morton Buildings for a pre-engineered building for their home and company, Midwest Slitting LLC.  Disputes arose during construction over the structure's quality.  The Rineharts refused to pay due to dissatisfaction with Morton's attempts at repair.  They sued the builder for damages under several theories, including breach of contract and warranty and negligent misrepresentation.[22]  Midwest Slitting, not a party to the contract, alleged Morton misrepresented that the building would be completed in a timely manner, accommodate its needs to relocate the business, and meet or exceed all industry standards.[23]  It sought economic damages for rent at an alternate facility, lost production, relocation costs, and interest expenses on their line of credit.  A jury awarded Midwest Slitting damages for negligent misrepresentation.[24]  Morton appealed, and the Kansas Court of Appeals upheld the misrepresentation award, finding that the economic loss doctrine did not bar Midwest's claims because it had no contract with Morton.[25]  Morton appealed to the KSC, arguing that it should not be liable for negligent misrepresentation because Midwest suffered only economic loss and because it had no contract with Morton.[26]

The KSC rejected contractual privity as a basis to determine whether the economic loss doctrine applies because it is not an element of a misrepresentation claim and because the Uniform Commercial Code does not displace fraud and misrepresentation claims.[27]  The KSC

---

[22] *Id*. at 625.

[23] *Id*.

[24] *Id*.

[25] *Id*. at 627.

[26] *Id*. at 626.

[27] *Id*. at 632; K.S.A. § 84–1–103(b); U.C.C. § 1–103(b); *see Level 3 Commc'ns, L.L.C. v. Liebert Corp.*, 535 F.3d 1146, 1162–63 (10th Cir. 2008) (under Colorado law tort of negligent misrepresentation based not on contract but on principles of duty and reasonable conduct).

noted that such a bright-line rule would have wide-ranging consequences.[28] The KSC stated the

better approach was to focus on the nature of the negligent misrepresentation tort.[29] After noting

the elements of negligent misrepresentation restricted liability by imposing a legal duty only in

limited circumstances, the KSC ultimately held "negligent misrepresentation claims are not

subject to the economic loss doctrine because the duty at issue arises by operation of law and the

doctrine's purposes are not furthered by its application under these circumstances."[30] Because

this rationale applies equally to fraudulent misrepresentation claims, the Court concludes

fraudulent misrepresentation claims based on a breach of duty by operation of law are not subject

to the economic loss doctrine.

Defendants offer no argument or authority to distinguish *Rinehart* or to withhold its

application to fraudulent misrepresentation claims. Count III arises from Defendants' alleged

failure to perform as promised in the LOI. In contrast, Counts I and II stem from Defendants'

actions before the LOI's execution.[31] The Court concludes that the economic loss doctrine does

not bar Counts I and II. The Court thus rejects the economic loss doctrine as a basis to dismiss

Counts I and II. Defendants' concern regarding double recovery is premature. The Court will

address that issue at a later stage of the litigation if necessary.

### C. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure states: "In alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake. Malice,

---

[28] *Rinehart*, 305 P.3d at 632.

[29] *Id.*

[30] *Id.* at 632–33.

[31] *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1288 (D. Kan. 2013) (holding economic loss doctrine did not bar negligent misrepresentation claim because contract claims arose from alleged failure to do as promised in the Agreement, while the misrepresentation claim stemmed from defendant's alleged negligence in conveying inaccurate information before plaintiffs entered the Agreement).

intent, knowledge, and other conditions of a person's mind may be alleged generally." The

Tenth Circuit requires "a complaint alleging [fraudulent misrepresentation] to 'set forth the time,

place, and contents of the false representation, the identity of the party making the false

statements and the consequences thereof.'"[32]  In other words, the alleging party must specify the

"'who, what, where, and when of the alleged fraud.'"[33]

Defendants argue Count I fails to satisfy Rule 9(b) because the FAC fails to identify what

representations were made and who made them.  The Court disagrees.  The FAC identified

Defendants Lai and Bagot as the speakers.  Defendants argue Rule 9(b) requires identification of

particular corporate officers who made each alleged oral misrepresentation.  The FAC alleges

both Lai and Bagot made each and every alleged misrepresentation.  That suffices under these

circumstances.

As for the what, the FAC identified the representations made in paragraphs 37, 38, 47,

48, 63-66, 68, 76, 82, and 85.  Defendants' deconstruction of the alleged misrepresentations in

their Reply to the motion to dismiss belies any argument that Plaintiffs do not have fair notice of

the misrepresentations they allegedly made.[34]  The Court concludes that Count I satisfies Rule

9(b)'s requirements.  The Court thus rejects Rule 9(b) as a basis to dismiss Count I.

---

[32] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[33] *Lee v. Kan. State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, at *11 (D. Kan. June 7, 2013) (citing *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (quoting *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001)).

[34] Doc. 26 at 4–6, 8–9, 15, and 18–19.

### D.   Rule 12(b)(6)

#### 1.   Fraudulent Misrepresentation (Count I)

To state a plausible claim for fraudulent inducement, a plaintiff must allege: 1) the defendant made false representations as a statement of existing and material fact; 2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; 3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; 4) the other party reasonably relied and acted upon the representations; and 5) the other party sustained damages by relying upon the representations.[35] Defendants argue Count I should be dismissed because Plaintiffs failed to allege facts to support the first and second element.

Defendants contend the alleged misrepresentations do not involve present or past material facts, but instead are statements of opinions or of future action.  Plaintiff counters that statements promising future conduct are fraudulent when coupled with a contemporaneous intent not to perform.  Defendants acknowledge that fraud claims can be based on statement of future intent when coupled with the requisite mental state, but they maintain that Plaintiffs have conclusorily alleged mental state.[36]

"Some courts have held that a claim of fraud must allege a factual basis to support general conclusory allegations of intent by pleading specific events that give rise to a strong inference of intent."[37]  But more courts have said that Rule 9(b) does not require allegations of

---

[35] *Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013) (citing *Chism v. Protective Life Ins. Co.,* 234 P.3d 780, 787 (Kan. 2010) (setting forth elements of fraudulent misrepresentation); *Kelly v. VinZant*, 197 P.3d 803, 808 (Kan. 2008) (stating elements of affirmative fraud); PIK Civ. 4th 127.40).

[36] Doc. 26 at 7.

[37] *Turner & Boisseau, Chartered v. Marshall Adjusting Corp.*, No. 86-6000-C, 1989 WL 149071, at *1 (D. Kan. Nov. 15, 1989) (citations omitted).

knowledge and intent to be specifically pled.[38] Indeed, Rule 9(b) specifically states "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) must be read in conjunction with Rule 8, which only requires that a pleading contain a "short and plain" statement of a claim or defense and that each averment of a pleading be "simple, concise, and direct."[39]

The FAC alleges Lai and Bagot made three distinct representations of existing facts, each false when made, to induce their reliance: 1) statements regarding Defendants' existing relationship with SMG; 2) statements regarding Defendants' existing relationship with Cinemark; and 3) statements asserting Defendants already possessed funding in place. Knowledge and intent were averred generally. The Court agrees with Defendants that the following alleged misrepresentations are either a statement of opinion or of future act: 1) Defendants could facilitate meetings between Plaintiffs and Cinemark; 2) Defendants represented "Cinemark likes the deal"; and 3) Defendants could "deliver" Cinemark as a partner. Similar representations as to SMG also constitute either a statement of opinion or of future act.

The rule that statements of opinion are not actionable is "tempered by the fact all statements must be considered in the context of the circumstances under which they are made and where the terms of dealing are not equal, and the representor has superior knowledge of the subject, a statement which would otherwise be one of opinion will be regarded as one of fact."[40] Plaintiffs have alleged Defendants had superior knowledge and were in a position of superiority

---

[38] *Id.* (citing *McGinty v. Beranger Volkswagen, Inc*., 633 F.2d 226, 228 (1st Cir. 1980) (collecting cases)).

[39] Fed. R Civ. P. 8(a), (b), and (e).

[40] *Near v. Crivello*, 673 F. Supp. 2d 1265, 1277 (D. Kan. 2009) (quoting *Fisher v. Mr. Harold's Hair Lab, Inc.*, 527 P.2d 1026, 1033 (Kan. 1974) and citing *Goff v. Am. Sav. Ass'n of Kan*., 561 P.2d 897, 901 (Kan. Ct. App. 1977) ("Many factors must be considered in determining whether a statement is a matter of fact or matter of opinion and whether or not a plaintiff has a right to rely on the statement.")).

over them.  Additionally, the alleged representations regarding funding, Defendants'

relationships with SMG and Cinemark, and Defendants' past investment successes are all

objectively verifiable statements of present facts.[41]  When these representations are combined

with the circumstances described in the FAC, particularly that Defendants were aware Plaintiffs

had other potential buyers/investors, the inference that Defendants lied about several facts to

induce Plaintiffs to enter the LOI becomes plausible.  For example, if Defendants did not have an

existing relationship with SMG or Cinemark, then the promises to "deliver" them as partners

were plausibly false when made.  Under these circumstances, the Court finds the FAC

sufficiently alleges fraudulent misrepresentation in that it informs Defendants of the specific

nature of Plaintiffs' allegations and the grounds upon which they rest, enabling Defendants to

prepare an effective response to the charges of fraudulent misrepresentation.  The Court thus

rejects Rule 12(b)(6) as a basis to dismiss Count I.  In so ruling, the Court does not express an

opinion as to the merits of Count I.

### 2. Negligent Misrepresentation (Count II)

"The elements of negligent misrepresentation are similar to those of a claim for fraud,

except that a negligent misrepresentation claim does not require proof that the defendant knew

the statement was untrue or was reckless as to whether the statement was true or false."[42]

Instead, a negligent misrepresentation claim "'merely requires proof that the defendant failed to

exercise reasonable care or competence to obtain or communicate true information.'"[43]

---

[41] *Near*, 673 F. Supp. 2d at 1277 (finding the alleged misrepresentations concerning defendants' financial prowess and history of success state present facts and do not relate to future action).

[42] *Sheldon v. Vermonty*, 31 F. Supp. 2d 1287, 1295 n.8 (D. Kan. 1998) (citing *Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609, 616 (Kan. 1994)). *See also Kreekside Partners v. Nord Bitumi U.S., Inc.*, 963 F. Supp. 959, 966 (D. Kan. 1997) ("[T]he elements of negligent misrepresentation differ from those of fraud only with respect to the standard by which the defendant is charged with knowledge of the representation's falsity.").

[43] *Gerhardt v. Harris*, 934 P.2d 976, 984 (Kan. 1997) (quoting *Mahler*, 876 P.2d at 616).

Plaintiffs rely upon the same statements and representations for Counts I and II. Defendants argue Count II is not actionable because the alleged misrepresentations concern future occurrences and Plaintiffs failed to allege a failure to exercise reasonable care. Because the alleged misrepresentations are a mixture of present facts and future action, the Court declines to dismiss Count II based on the nature of the misrepresentations. Regarding the reasonable care element, paragraph 165 of the FAC states: "Defendants failed to exercise reasonable care or competence in obtaining the information contained in the False Representations."[44] In their response to the motion, they argue that a jury could infer that Lai and Bagot failed to exercise reasonable care with collecting or representing information regarding Calidant's financials because they alleged that Lai and Bagot were willing to make any promises to induce Plaintiffs to enter into the LOI with Defendants.[45] The Court finds this argument and paragraph 165 of the FAC conclusory. Plaintiffs have asserted no facts indicating what financial information Defendants provided that misrepresented their financial condition. The Court therefore dismisses Count II because a required element of negligent misrepresentation is missing.

## IV.     Conclusion

Defendants' motion to dismiss is granted in part and denied in part. The Court permits Plaintiffs to proceed with Count I, but will dismiss Count II at this time.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed three double-spaced pages and shall strictly comply with the standards enunciated in

---

[44] Doc. 10 at 22.

[45] Doc. 28 at 22, n.11.

*Comeau v. Rupp*.[46]  The response to any motion for reconsideration shall not exceed three

double-spaced pages.  No reply shall be filed.

      **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts II and III

of Plaintiffs' Petition (Doc. 6) is denied as MOOT.

      **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Counts I and II of

Plaintiffs' FAC (Doc. 16) is GRANTED IN PART AND DENIED IN PART.  Count II is

dismissed.

      **IT IS SO ORDERED.**

Dated: <u>August 30, 2017</u>

                      S/ Julie A. Robinson
                     JULIE A. ROBINSON
                     UNITED STATES DISTRICT JUDGE

---

[46] 810 F. Supp. 1172 (D. Kan. 1992).